FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 11, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SCOTT S., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | No. 2:20-CV-00236-JTR <br><br> ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 13, 14. Attorney Timothy Anderson represents Scott S. (Plaintiff); Special Assistant United States Attorney Jordan Goddard represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 4. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

ORDER GRANTING PLAINTIFF'S MOTION . . . - 1

# JURISDICTION

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income on February 21, 2018, alleging disability since January 1, 2014,[1] due to chronic lower back pain, sciatica in both legs, inability to stand for prolonged periods of time, L4-L5 bulging discs, chronic back stiffness, left leg pain, low hearing in both ears, and high blood pressure. Tr. 58-59. The applications were denied initially and upon reconsideration. Tr. 111-19, 122-35. Administrative Law Judge (ALJ) Jesse Shumway held a hearing on May 31, 2019, Tr. 31-57, and issued an unfavorable decision on July 3, 2019. Tr. 15-25. Plaintiff requested review of the ALJ's decision by the Appeals Council and the Appeals Council denied the request for review on April 24, 2020. Tr. 1-5. The ALJ's July 2019 decision is the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on June 26, 2020. ECF No. 1.

# STATEMENT OF FACTS

Plaintiff was born in 1968 and was 45 years old as of his alleged onset date. Tr. 23. He has a high school education and has worked in construction, logging, and the lumber industry. Tr. 23, 230-31. He was initially injured in an on-the-job incident where he was hit by a front-end loader. Tr. 297.

# STANDARD OF REVIEW

The ALJ is responsible for determining the reliability of a claimant's allegations, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The

---

[1] At the hearing Plaintiff amended his alleged onset date to March 1, 2017. Tr. 34.

decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 404.1520(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the claimant has the burden of establishing a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work. 20 C.F.R. § 404.1520(a)(4). If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show (1) the claimant can make an adjustment to other work; and (2) the claimant can perform specific jobs that exist in the national economy. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004).

If a claimant cannot make an adjustment to other work in the national economy, the claimant will be found disabled. 20 C.F.R. § 404.1520(a)(4)(v).

## ADMINISTRATIVE FINDINGS

On July 3, 2019, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act. Tr. 15-25.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since January 1, 2014. Tr. 17.[2]

At step two, the ALJ determined Plaintiff had the following severe impairments: lumbar degenerative disc disease and mild obesity. *Id.*

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 18.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and found he could perform a range of light work, with the following limitations:

> He can stand and/or walk for thirty minutes at a time for up to four hours total in combination in an eight-hour workday; he can only occasionally perform all postural activities; and he cannot have concentrated exposure to vibration or hazards, such as working at unprotected heights and/or moving mechanical parts.

Tr. 18-19.

At step four, the ALJ found Plaintiff was unable to perform his past relevant work as a construction worker, all around logger, or lumber straightener. Tr. 23.

At step five the ALJ found that, considering Plaintiff's age, education, work experience and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform,

---

[2] The ALJ did not acknowledge that Plaintiff amended his alleged onset date at the hearing.

specifically identifying the representative occupations of cashier II, production assembler, and outside deliverer. Tr. 23-24.

The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from the original alleged onset date through the date of the decision. Tr. 24-25.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.

Plaintiff contends the Commissioner erred by (1) not properly assessing Plaintiff's testimony; and (2) giving legally insufficient reasons for rejecting the opinion of the medical expert, Robert Smiley, M.D.

## DISCUSSION

**1.    Plaintiff's subjective statements**

Plaintiff contends the ALJ erred by improperly rejecting his subjective complaints. ECF No. 13 at 17-21.

It is the province of the ALJ to make determinations regarding a claimant's allegations. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific, cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment merely because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). "General findings are insufficient: rather the ALJ must identify what testimony is not

///

credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 19. The ALJ found Plaintiff's allegations were not consistent with the objective medical findings, varied from prior statements to his physicians and Social Security, conflicted with his activities of daily living, and were inconsistent with his course of treatment. Tr. 20-21.

Plaintiff argues the ALJ's reasoning does not reach the clear and convincing standard, as facts were considered out of context and the ALJ selectively read the record. ECF No. 13 at 4-16. Defendant argues the ALJ reasonably considered and interpreted the record and legitimately found Plaintiff's allegations to be unsupported by his treatment, his inconsistent statements, and his activities. ECF No. 14 at 4-9. The Court finds the ALJ did not offer clear and convincing reasons for discounting Plaintiff's subjective testimony.

*a. Varying prior statements*

The ALJ found Plaintiff made prior statements to his physicians and to the Social Security Administration that varied from his testimony at hearing. Tr. 20. The ALJ specifically pointed to Plaintiff's changing reports about how long he could walk before needing a break, and how long of a break he would need; his documented activities; and his reports to his doctors regarding improvement with treatment. Tr. 20-21. The Court finds none of these factors rise to the level of clear and convincing.

An ALJ may consider inconsistent statements by a claimant in assessing their credibility. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). "A single discrepancy fails, however, to justify the wholesale dismissal of a claimant's

ORDER GRANTING PLAINTIFF'S MOTION . . . - 6

testimony." *Popa v. Berryhill*, 872 F.3d 901, 906-07 (9th Cir. 2017). The Court finds Plaintiff's varying reports of how long he was able to walk before needing a rest, and how long the rest needed to be, do not indicate any clear inconsistency, given the length of time between the varying statements. Tr. 253 (March 2018, function report); 43 (May 2019, hearing testimony). The records indicate that Plaintiff's symptoms periodically waxed and waned, with reported pain levels varying and Plaintiff experiencing greater or reduced relief from his pain medication and other treatments. *See* Tr. 311, 396, 524-29, 531-36, 583-91, 660-67. Plaintiff also testified that he would push himself some days more than others but would have more pain in the following days. Tr. 44. There is no inconsistency that justifies finding Plaintiff's allegations generally unreliable.

      The ALJ additionally found Plaintiff's "strong participation in activities of daily living" was inconsistent with his testimony at the hearing. Tr. 20. The ALJ pointed to Plaintiff caring for his dog, engaging in general household and personal care, splitting firewood, running errands, and jumping rope with his grandchild. *Id.* A claimant's daily activities may support an adverse credibility finding if the claimant's activities contradict their other testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). However, "the mere fact that a plaintiff has carried on certain daily activities ... does not in any way detract from [their] credibility as to [their] overall disability." *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004). The Ninth Circuit has consistently found that the ability to engage in basic daily activities and personal care is not necessarily inconsistent with disability:

> We have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day.

///

*Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014). There is nothing about Plaintiff's testimony regarding his pain and limitations that is inconsistent with performing personal care, doing minimal chores, or running brief errands. Indeed, Plaintiff's function report and testimony indicate he is capable of doing these things for short periods of time while taking rests. Tr. 48-49, 250. With respect to caring for his dog and splitting firewood, Plaintiff indicated he was only able to take his dog on short walks, and not every day, and that he could do "limited" cutting of wood. Tr. 250-52. As for Plaintiff jumping rope with his granddaughter, this is only noted once in the record, and Plaintiff injured his knee attempting to do it. Tr. 566, 574. This does not constitute substantial evidence of Plaintiff "playing very physical games with grandchildren." The Court finds the ALJ's conclusion that Plaintiff participated in activities that were inconsistent with his testimony is not supported by the record.

      Finally, the ALJ found Plaintiff's contemporaneous statements to providers were inconsistent with his allegations of disability, noting his reports that treatment worked well and that he had good responses to injections. Tr. 20. While an ALJ may consider the consistency between a claimant's reports to their doctors and their reports to the Agency, the Court finds the ALJ failed to identify any inconsistency. Plaintiff reported he received some relief from his medications and other treatments, but never reported sustained resolution of his problems. He consistently reported significant pain levels, and substantial interference with his ability to engage in regular activities, and he rarely reported more than 50% improvement in his condition with treatment. Tr. 311-16, 531-36, 583-91, 615-22, 643-49, 669-74, 683-88. Reports of doing well and improvement must be read in context. *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001). The Court finds the ALJ's analysis is not supported by substantial evidence.

      *b. Course of treatment*

ORDER GRANTING PLAINTIFF'S MOTION . . . - 8

1       The ALJ found Plaintiff's course of treatment was inconsistent with his allegations of disability, noting he pursued a relatively conservative course of pain management and was "unwilling to even entertain the thought of surgery." Tr. 20-21. While an ALJ may discount a claimant's allegations based on him only receiving "conservative" treatment, *Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40 (9th Cir. 2008), the ALJ's characterization of Plaintiff's treatment as conservative is not supported. Plaintiff received epidural steroid injections and had branch blocks to address his pain, in addition to being seen by a pain management clinic and receiving opiate pain medications. Tr. 305, 571, 595, 611, 677. In August 2017 Plaintiff's treating provider indicated that Plaintiff had failed conservative therapy and was being referred for an MRI and consultation for neurosurgery. Tr. 400. With respect to the issue of surgery, the record reflects the surgeon's discussion with Plaintiff regarding further testing and treatment options and noted a lumbar fusion could be warranted. Tr. 391. The surgeon noted: "He indicated to me that he is not interested in considering this." *Id.* The ALJ's implication that Plaintiff's conditions were not as severe as alleged due to his desire to not have a lumbar fusion is not reasonable. Prior to his visit with the surgeon, Plaintiff had requested the referral to evaluate possible surgery. Tr. 297. A later note documented Plaintiff's report that he was still in discussions with the orthopedic team about the possibility of surgery or a nerve ablation. Tr. 540. At the hearing, Plaintiff testified that while he did not want surgery, he did not shut down the option, and further testified that surgery had not actually been recommended yet, as there were other treatment modalities to try first. Tr. 52. This appears to be consistent with the records from the surgeon, noting the need for further testing before a fusion would be recommended, and exploring other possibilities for treatment. Tr. 391. Therefore, the Court finds that the ALJ's assessment of Plaintiff's treatment as conservative and unsupportive of his allegations is not supported by the record.

      c. Objective medical findings

The only other rationale offered by the ALJ for discounting Plaintiff's allegations was that they were not consistent with the objective medical findings, including the MRI showing mild to moderate abnormalities, and the normal exam results throughout the record. Tr. 20. An ALJ may cite inconsistencies between a claimant's testimony and the objective medical evidence in discounting the claimant's symptom statements. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). But this cannot be the only reason provided by the ALJ. *See Lester*, 81 F.3d at 834 (the ALJ may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence); *see Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (Although it cannot serve as the sole ground for rejecting a claimant's credibility, objective medical evidence is a "relevant factor in determining the severity of the claimant's pain and its disabling effects."). Because none of the ALJ's other reasons reach the clear and convincing standard, the objective medical findings alone may not be the ALJ's only rationale.[3]

On remand, the ALJ shall reassess Plaintiff's subjective reports.

**2.    Medical expert Robert Smiley, M.D.**

Plaintiff contends the ALJ erred by improperly rejecting the opinion of the medical expert who testified at the hearing, Robert Smiley, M.D. ECF No. 13 at 17-20.

For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must weigh medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c.

---

[3] Furthermore, it is not clear to the Court that the ALJ's characterization of the objective evidence as inconsistent with Plaintiff's allegations is correct, given the medical expert's testimony that Plaintiff had "significant pathology."

ORDER GRANTING PLAINTIFF'S MOTION . . . - 10

The new regulations provide the ALJ will no longer give any specific evidentiary weight to medical opinions or prior administrative medical findings, including those from treating medical sources. 20 C.F.R. § 404.1520c(a). Instead, the ALJ will consider the persuasiveness of each medical opinion and prior administrative medical finding, regardless of whether the medical source is an Acceptable Medical Source. 20 C.F.R. § 404.1520c(c). The ALJ is required to consider multiple factors, including supportability, consistency, the source's relationship with the claimant, any specialization of the source, and other factors (such as the source's familiarity with other evidence in the file or an understanding of Social Security's disability program). *Id.* The regulations make clear that the supportability and consistency of the opinion are the most important factors, and the ALJ must articulate how they considered those factors in determining the persuasiveness of each medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520a(b). The ALJ may explain how they considered the other factors, but is not required to do so, except in cases where two or more opinions are equally well-supported and consistent with the record. *Id.*

Supportability and consistency are further explained in the regulations:

(1) *Supportability.* The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) *Consistency.* The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

///

///

ORDER GRANTING PLAINTIFF'S MOTION . . . - 11

20 C.F.R. § 404.1520c(c). [4]

      Dr. Smiley testified that he agreed with Plaintiff's treating ARNP, Mr. Wright, that Plaintiff was limited to performing sedentary work, and agreed that it was reasonable that Plaintiff would need to lay down to relieve pain. Tr. 38, 41. Upon further questioning he testified that Plaintiff could maybe stand or walk for four hours in a day, but not for more than 30 minutes at a time. Tr. 40.

      The ALJ found Dr. Smiley's opinion regarding standing and walking was consistent with and supported by the record, and thus was persuasive, but found the remainder of his testimony was not consistent with or supported by the longitudinal evidence. Tr. 21. The ALJ noted Dr. Smiley missed a reference in the record regarding Plaintiff jumping rope and found Dr. Smiley did not know whether Plaintiff showed gait impairment on physical exams in the record. *Id.* The ALJ thus concluded that Dr. Smiley over-relied on the lumbar MRI in the record and ignored other evidence of Plaintiff's actual functioning, rendering his opinion unpersuasive. *Id.*

      Plaintiff argues the evidence of him jumping rope does not warrant the rejection of the medical expert's testimony and asserts the ALJ failed to explain how the findings of normal gait throughout the record showed Plaintiff was less limited than Dr. Smiley testified. ECF No. 13 at 20. Defendant argues the ALJ reasonably found Dr. Smiley's testimony to be inconsistent with the record and lacking in support and adequate explanation. ECF No. 14 at 14-15.

---

[4] The parties disagree over whether Ninth Circuit case law continues to be controlling in light of the amended regulations, specifically whether an ALJ is still required to provide specific and legitimate reasons for discounting a contradicted opinion from a treating or examining physician. ECF No. 13 at 18-19; ECF No. 14 at 9-13. The Court finds resolution of this question unnecessary to the disposition of this case.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 12

The Court finds that the ALJ's discussion is not supported by substantial evidence and failed to comply with the new regulations.

Under the new regulations, an ALJ is required to articulate how they considered the consistency and supportability factors in determining the persuasiveness of each medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520a(b). The ALJ here did not address the consistency between Dr. Smiley's opinion and other opinions in the file, and only discussed the supportability within the record.

As discussed above, the record reflects only a single incident of Plaintiff jumping rope with his granddaughter, at which point he injured his knee. Tr. 566, 574. The ALJ additionally mischaracterized Dr. Smiley's testimony: the doctor testified that he didn't know whether Plaintiff was regularly able to jump rope or simply had the occasional good day where he was able to do so, and stated that given the significance of Plaintiff's pathology, it was hard to imagine that he could stand and walk for six hours, let alone jump rope *on a regular basis*. Tr. 40. The ALJ's discussion of Dr. Smiley's testimony does not acknowledge the isolated nature of the event or Dr. Smiley's statements that this was not an activity Plaintiff could engage in on a regular basis, while noting it was possible he had the occasional good day. Tr. 21.

Finally, the ALJ's discussion of Dr. Smiley's statements about Plaintiff's gait are not accurate. The ALJ stated "Dr. Smiley did not know whether the claimant showed gait impairment on physical examination," then cited to numerous instances where Plaintiff's gait was recorded as normal. Tr. 20. The actual exchange between the ALJ and the medical expert was as follows:

> ALJ: In terms of clinical observations, do we have any physical exams in which he demonstrates difficulty walking or standing or otherwise being on his feet?

Doctor: I didn't record that in my notes, Your Honor, so you have me. It may be there, it may not be there, but usually if that was the case I would have put it in my notes, and I didn't.

ALJ: You mean like if there were findings that his gait was antalgic or abnormal, you would have written that down?

Doctor: Yes.

ALJ: Okay. I mean, I wrote down in my notes that his gait was always normal, so I mean, it sounds like we're agreeing on that. Is that correct?

Doctor: Yes.

Tr. 39. The ALJ failed to explain how this testimony or the cited records in any way undermine Dr. Smiley's opinion.

The Court therefore finds the ALJ's conclusion that Dr. Smiley overly relied on the MRI results and ignored evidence of Plaintiff's actual functioning is unsupported by substantial evidence. On remand the ALJ will reconsider Dr. Smiley's testimony.

## CONCLUSION

The ALJ's decision is not supported by substantial evidence. On remand, the ALJ shall reevaluate the medical evidence and Plaintiff's subjective complaints, making findings on each of the five steps of the sequential evaluation process, obtain supplemental testimony from a vocational expert as needed, and take into consideration any other evidence or testimony relevant to Plaintiff's disability claim.

Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED**.

///

    2.    Defendant's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

    3.    The matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

    4.    An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

**IT IS SO ORDERED.**

DATED May 11, 2021.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE